UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PAMMALLA SHANNON UPLINGER | ) | Case No. 09-13129-RGM |
| | ) | Chapter 13 |
| Debtor | ) | |
| | ) | |
| PAMMALLA SHANNON UPLINGER | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 10-1325 |
| | ) | |
| REES BROOME, P.C. | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

Before the court is the defendant's motion for summary judgment on the three remaining counts before the court. This is an action by a chapter 13 debtor, Pammalla Shannon Uplinger, against a law firm, Rees Broome, P.C. ("Rees Broome"), that represented her condominium association in obtaining a judgment against her for delinquent assessments she says she had been satisfied under the terms of an agreed payment plan. After hearing oral argument from the parties on July 18, 2011, the court took the issues under advisement and is now prepared to rule. For the reasons stated, the motion will be granted with respect to two of the counts and denied with respect to the third.

1

Background

I.

Pammalla Shannon Uplinger ("the debtor") filed a voluntary petition in this court on April 22, 2009, for adjustment of her debts under chapter 13 of the Bankruptcy Code. The immediate impetus for the filing was a pending foreclosure by her mortgage company. After her first two proposed plans were denied confirmation, a modified plan was confirmed on February 18, 2010.

After filing her petition, the debtor commenced an action against Rees Broome in the Circuit Court of the City of Alexandria, Virginia. Following adverse rulings dismissing a number of her claims with prejudice, she took a voluntary nonsuit and refiled her action in this court. A number of counts were dismissed on res judicata grounds, but two counts (Counts 1 and 7) remain, and the debtor was permitted to add an additional count (Count 9).[1]

The surviving counts allege violations of the Fair Debt Collection Practices Act by Rees Broome in connection with the collection of disputed liabilities and may be summarized as follows:[2]

- Count 1 — Violation of 15 U.S.C. § 1692f(1) by sending an email on August 25, 2011, to collect $1,408.55 that the debtor asserts she did not owe based on an agreed payment plan.

- Count 7 — Violation of 15 U.S.C. § 1692e(8) by reporting to a credit reporting

---

[1] Rees Broome's motion for reconsideration of the order allowing Count 9 to be added was deferred to consideration to the trial on the merits, unless sooner resolved on summary judgment.

[2] The surviving counts are non-core, related proceedings within the meaning of 28 U.S.C. § 157(c). The parties have consented to entry of appropriate orders or judgments by a bankruptcy judge, subject to the right of appeal.

2

      agency that she owed an unpaid debt of $4,290 in April 2009, even though the judgment for that amount had been satisfied a year previously.

- Count 9 — Violation of 15 U.S.C. § 1692f(1) by bringing a lawsuit against the debtor and obtaining a $2,099.25 judgment against her on February 5, 2009, for sums that had been extinguished by completion of the payment plan.

The complaint seeks a total of $825,000 in compensatory damages for claimed economic losses and emotional distress.

## II.

Although the inferences and legal conclusions to be drawn from them are hotly contested, the basic facts are relatively straight-forward. The debtor has owned and lived in an apartment unit in a condominium known as Alexandria Overlook in the City of Alexandria, Virginia, since 1991. Following the collapse in 2006 of a business that she had owned and operated for many years, she fell behind in both her mortgage payments and condominium assessments. The Alexandria Overlook Condominium Council of Co-Owners ("Alexandria Overlook" or "the Association") eventually referred the delinquent assessments to Rees Broome for enforcement and collection. Rees Broome sued the debtor in May 2006 and obtained a judgment against her in October of that year for $4,290.38 plus $600.00 in attorney fees. In July 2007, Christopher B. DeMers, an attorney in the firm, sent the debtor a "Notice of Intent to Foreclose" the liens that had been filed for unpaid assessments . The notice asserted a total delinquency in the amount of $13,501.17 and advised the debtor that if that amount was not paid by October 1st, the foreclosure would proceed. On October 1, 2007, the debtor sent to Jack Rhodes, an attorney at Rees Broome, an email with the subject line "Request for payment arrangement" that stated as follows:

3

> I respectfully request a payment arrangement to cover the balance of $8028.48 due to my Alexandria Overlook account remaining as of today. I sent your office a cashier's check on Saturday for $4747.98, which represents the other portion of the total debt.

The email set forth a proposed payment schedule consisting of seven payments of $1,000 per month beginning November 31, 2007, and a final payment of $1,028 on June 30, 2008, with the debtor also resuming payment of the regular condominium fees in January 2008. The debtor derived the total of $12,776.46 (rather than the $13,501.17 stated in the notice of intent to foreclose) by adding up the amounts set forth in the in the itemized break-down provided as part of the notice.[3]

Rees Broome communicated the debtor's proposal to the Board of Directors of Alexandria Overlook by letter dated October 19, 2007. The letter characterized the debtor's proposal as one "to pay the remaining balance on her account in eight monthly installments of $1,000." The letter further stated, "At this time, Ms. Uplinger owes the Association $9,086.53."[4] Richard E. Osseck, the president of the Board of Directors, replied to Rees Broome

---

[3] To be fair to the debtor, it is not possible to reconcile the summary set forth at the top of page 2 of the notice with the breakdown among the three filed liens and the judgment that follows on the very same page. The summary reflects $9,187.14 in assessments and late charges, $914.03 in accrued interest, $2,991.00 in legal fees, and $409.00 in costs, for a total of $13,501.17. The breakdown, however, reflects a total of $12,776.44:

|  | Assessments | Costs | Legal Fees | Interest | Total |
|---|---|---|---|---|---|
| Lien 11/18/05 | $ 938.72 |  | $ 625.50 |  | $ 1,564.22 |
| Lien 3/28/06 | $ 2,849.48 | $ 193.00 | $ 1,705.50 |  | $ 4,747.98 |
| Judgment 7/18/06 | $ 502.18 | $ 120.00 | $ 295.50 | $ 914.03 | $ 1,831.71 |
| Lien 4/30/07 | $ 4,172.03 | $ 48.00 | $ 412.50 |  | $ 4,632.53 |
| Totals | $ 8,462.41 | $ 361.00 | $ 3,039.00 | $ 914.03 | $ 12,776.44 |

[4] On the date the notice of intent to foreclose was sent, the statement of account maintained by Rees Broome reflected that the debtor owed $13,501.17. By the time Rees Broome's letter was sent to the board, another $285.00 in late charges and legal fees had been

by letter dated November 12, 2007, which stated:

> The board has approved your recommendation to accept Ms. Uplinger's offer in the 19 October 2007 letter with the following amendments:
>
>> (1) *The outstanding amount of the delinquency is to be determined by Rees Broome.*
>> (2) Ms. Uplinger, as proposed by Rees Broome, must provide the Board with proof of earnings.
>> (3) Ms. Uplinger, as proposed by Rees Broome, must provide the Board with copies of her bank records.
>> (4) Ms. Uplinger will make payments over a period of nine (9) months.
>> (5) Ms. Uplinger will make monthly payments of $1,000
>> (6) Ms. Uplinger will make all monthly payments by certified check.
>> (7) Ms Uplinger is required to sign an agreement whereby she affirms that she understands that upon default, the Association will resume foreclosure proceedings.
>
> The Board accepts Ms. Uplinger's proposal for her delinquent assessment payments to begin on 30 November 2007, and for her regular assessment payments to resume on 01 January 2008.
>
> *Regarding the request for determination of the exact amount of the delinquency in item (1) above, the Board understands this amount to have been $13,501.17 according to the Rees Broome Collection Status Report of 01 October 2007,* and this amount does not reflect the certified check payment of $4,747.98 documented in your 19 October 2007 letter.

(emphasis added). On November 26, 2011, Mr. Rhodes sent the debtor (by email) a letter referencing her "proposal to pay the delinquency over a period of eight consecutive (8) months beginning November 30, 2007," and stating:

> I wish to inform you that the Board has considered your request and has resolved that the following conditions must be met before any such resolution can be considered:
> ● You must provide the Council with proof of your current earnings in the form of a payment stub or a copy of a paycheck issued within the past two weeks.

---

posted to the account, leaving a balance, after application of the $4,747.98 payment, of $9,038.19.

5

- You must provide the Council with a copy of your bank statement issued within the past 30 days.
- You must sign and return an original notarized version of the enclosed Statement of Understanding.

The debtor did not provide the requested documentation, but did send a $1,000 personal check for the first payment under her proposal. On December 27, 2007, Ursula A. Koenig, another attorney at Rees Broome, sent a follow-up letter to the debtor, which began:

> On November 26, 2007, we sent you a letter advising that the Board of Directors of the Alexandria Overlook Condominium Council of Co-Owners ("Council") *had approved your payment plan proposal* provided you met several additional requirements.

(emphasis added). The letter itemized the documents that had not been provided, and stated, "Your failure to bring the payment plan into compliance within ten days of the date of this letter will result in the Council immediately resuming the [foreclosure] proceedings." The letter then advised her:

> To *bring the payment plan into compliance*, you must do the following:
> 1. Submit a payment for $2100 for the November and December payments and for the legal fees incurred as a result of this letter. THIS PAYMENT MUST BE MADE IN CERTIFIED FUNDS, MONEY ORDERS OR CASHIER'S CHECK – PERSONAL CHECKS WILL NOT BE ACCEPTED. In fact, enclosed is your personal check dated November 29, 2007, for $1000.
> 2. You must provide this office with proof of your current earnings in the form of a payment stub or a copy of a paycheck issued within the last two (2) weeks;
> 3. You must provide this office with a copy of your bank account statement issued within the past 30 days.
> 4. You must sign and return an original notarized version of the enclosed Statement of Understanding.

(emphasis added). The debtor made the $2,100 payment and returned the required documents. She then made five $1,000 payments at monthly intervals beginning at the end of January 2008 and a $1,029 payment in early July 2008. In a cover letter accompanying that payment, she

stated:

> Enclosed is my final payment to pay off my delinquent account with Alexandria Overlook. *Please note that I have misplaced my original correspondence documenting the final payment amount*, which I recollect to be $1029.00. I spoke with Patti, your paralegal, last week, and she was unable to verify the amount . . . . Since I do not want to delay payment further, I am providing my check for the amount of $1029.00.

(emphasis added). In response, Patricia P. Hernandez, a paralegal at Rees Broome, sent the debtor an email on August 25, 2008, stating:

> Attached is an updated statement of account for the above reference [*sic*] property. The current balance on your account is $1408.55 through August 31, 2008. Please give me a call if you have any questions.

The quoted figure of $1,408.55 included the August 2008 assessment (in the amount of $374.36), which the debtor had already paid.. The debtor emailed Ms. Hernandez partially contesting the amount owed:

> My regular monthly payment for July is not reflected on the statement, and it should be, and *once it is applied the balance will be just over $1000. . . .*
>
> Meanwhile, I will try to get another payment to you as soon as possible, however I will need to spread out the final amount over several payments. I recently lost my job, and I am presently looking for a new job. I am just now at the end of August learning about the balance, and I was not expecting to make more payments, so this is quite a problem for me.
>
> I request that you do not add additional charges to my account. Since your firm did not inform me of the balance at the end of June, when I requested the information, I do not agree to pay additional legal fees or other additional charges related to the extension.

(emphasis added). In an email the next day, Ms. Hernandez advised the debtor that the July payment was already reflected but acknowledged that any August payment the debtor had made was not, and that she had requested an updated statement from "management." The email also

7

stated:

> If you need to modify your payment plan you must submit your proposal in writing and it should include the amount you plan the pay, and the day of the month you plan to make your payments. Once we receive the proposal we will submit it to the board for approval.

The matter was not resolved, and on October 3, 2008, Rees Broome sent the debtor a letter stating, "Lsast [*sic*] year you entered into an agreement with the Council whereby you would pay your account in full within 8 months. You have failed to do so." The letter demanded payment of $1,525.55 (which included $117.00 for the demand letter) within 14 days. The debtor disputed the $117.00 in additional legal fees, but sent Rees Broome a check for $1,034.19 on October 28, 2011. Two days later, Rees Broome filed suit against the debtor in the General District Court for the City of Alexandria, Virginia, seeking judgment for $1,899.91 in delinquent assessments plus reasonable attorney's fees. By letter of November 13, 2011, Rees Broom returned the $1,034.19 check as insufficient in amount and advised the debtor that she now owed, with additional legal fees, $2,323.41.

Prior to the initial court appearance, the debtor sent Rees Broome a letter which, among issues, addressed the disputed delinquency:

> You claimed in your letter dated 3 October 2008 that I did [*sic*] meet the terms of our payment agreement. As I informed you previously (my letter dated 7 July 2008), I have misplaced my copy of the original correspondence indicating my final payment amount. Please send me a copy of that letter, which accompanied my first payment at the end of September 2007 for $4747.98 and indicated my proposed payment schedule, which your client accepted. Please also bring the original letter to court on 19 December for examination in the courtroom.

In a reply dated December 16, 2008, Kelli Budd, a Rees Broome attorney, stated: "[Y]ou did not meet the terms of your payment plan as your account was not paid off within 8 months as

8

required by the plan."

In a bill of particulars filed on January 8, 2009, Rees Broome reduced the amount of the claimed assessments to $1,200.33.[5]  At a trial held on February 5, 2009, the debtor was unable to produce, and Rees Broome did not present, a copy of the payment plan proposal,[6] and the court—based on the testimony of a management company employee, Brian McDonnell, as to the amount the debtor owed—entered judgment against the debtor in the amount of $1,296.25 plus $750.00 in attorney's fees.[7]

The debtor appealed the judgment to the Circuit Court for the City of Alexandria (which under Virginia law entitled her to a trial de novo) and, as a condition of the appeal, was required to post a $2,000.00 cash bond.  Before a trial could be had in the Circuit Court, the debtor filed her chapter 13 petition on April 22, 2009.[8]  The petition was filed in order to stay a foreclosure by Bank of America, which held the first deed of trust against her condominium unit.  Prior to the bankruptcy filing, the debtor had been negotiating with the bank for a loan modification, but the Bank decided not to modify the loan.  At the time the debtor was negotiating with the Bank,

---

[5] The amount originally claimed included $748.72 in accelerated payments for November and December 2008.  The debtor, however, paid those as they became due.   Indeed, the record shows that the debtor has timely paid *all* the regular assessments that have become due since January 2008.

[6] The debtor did not recall that the payment plan proposal was in the form of an email rather than a letter.

[7] The judgment was apparently based on the management company's financial transaction report, which included the February 2009 regular assessment of $337.06.  Payment of that assessment was not then overdue, and the actual past due amount, as reflected on the management company's records, was $959.19.

[8] The action was ultimately dismissed after the debtor and Alexandria Overlook reached a settlement of a separate lawsuit the debtor brought against it in state court.

Rees Broome reported her to a credit reporting agency as owing $4,290 as of April 2009. This is the amount of the October 13, 2006, judgment. Apparently once Rees Broome reports to the credit reporting agencies (through a service bureau) the amount of a debt that it is collecting, that amount is carried over automatically and reported anew each succeeding month, even though Rees Broome had marked the judgment itself satisfied in 2008.

In June 2009, the debtor applied for a position as a technical writer with a federal government agency. Although she was successful in obtaining an interview, she was not offered the position.[9] In November 2009, following her stepmother's death, the debtor totaled her car when she struck a parked truck while driving to Indiana to retrieve some of her stepmother's belongings. On August 20, 2009, Rees Broome filed a proof of claim in the debtor's chapter 13 case on behalf of Alexandria Overlook in the amount of $4,754.17.[10] That claim was ultimately disallowed on March 30, 2010.[11]

---

[9] The debtor has separately brought suit in this court against the recruiting contractor for violation of the Fair Credit Reporting Act and the government agency for discriminating against her in hiring in violation of § 525(a), Bankruptcy Code.

[10] The claim was broken down as follows: $1,147.33 in condominium assessments, $1,653.84 in interest, $53.00 in costs, and $1,900.00 in attorney's fees.

[11] Between the filing of the proof of claim and the hearing on the debtor's objection, the Board of Directors had passed a resolution in September 2009 directing that no further enforcement action be taken and that any existing delinquency be "written off." Rees Broome was accordingly instructed to take no further action in the bankruptcy case. In November 2009, the debtor brought a lawsuit against Alexandria Overlook in state court related to the collection efforts. That suit was settled in April 2010, although the debtor subsequently brought an adversary proceeding against Alexandria Overlook in this court alleging a violation of the settlement agreement and the automatic stay based on Rees Broome's continued reporting of the delinquency after it had been written off.

Discussion

I.

Rees Broome seeks summary judgment in its favor on all counts. It asserts that the August 25, 2008, email did not constitute an attempt to collect a debt; that there was never a binding agreement to accept $8,028.48 to extinguish the delinquency; that any recovery is barred by the bona fide error defense; and that the debtor has not proved that she suffered any damages.

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(a). In ruling on motion for summary judgment, a court should believe the evidence of the non-moving party, and all justifiable inferences must be drawn in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986). At the same time, only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment. *Id.* at 248, 106 S. Ct. at 2510. The Supreme Court has explained that summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555, 91 L. Ed. 2d 265 (1986).

B.

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") prohibits debt collectors—defined as anyone who regularly collects or attempts to collect, directly or

indirectly, consumer debts owed to another— from making false or misleading representations and from engaging in various abusive and unfair practices. *Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The definition of "debt collector" includes attorneys who regularly collect consumer debts on behalf of their clients. *Heintz*, 514 U.S. at 294, 115 S.Ct. at 1491. The Act, moreover, does not recognize a common-law immunity for litigation actions by attorneys. *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226 (4th Cir. 2007) (holding that district court improperly dismissed a claim that summary judgment motion and interrogatories sent by creditor's law firm to debtor's attorney violated provisions of the Act). Among other things, the Act prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This includes "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Additionally, a debt collector "may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. This includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). A debt collector who violates the Act is liable to the aggrieved debtor for actual damages sustained, statutory damages not exceeding $1,000, and reasonable attorney's fees. 15 U.S.C. § 1692k(a). Any action to enforce such liability must be brought within one year of the date on which the violation occurs. 15 U.S.C. § 1692k(d). In determining the amount of damages, the court must consider, among other relevant factors, "the frequency and persistence of noncompliance by the debt collector, the

nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" 15 U.S.C. § 1692k(b)(1). However, a debt collector may not be held liable if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

II.

Since two of the counts still before the court (Counts 1 and 9) are predicated on Rees Broom's actions to collect a debt that the debtor contends was extinguished when she completed the payments set forth in her request for a payment arrangement, it is appropriate to address that issue first.

A.

As a purely factual matter, it is clear that there never was an actual meeting of the minds between the debtor and the Alexandria Overlook board of directors. The debtor proposed to satisfy her remaining delinquency to Alexandria Overlook by paying $8,028.48 over a period of 8 months. The board did not agree to the debtor's dollar figure or to any compromise of the amount owed. It did agree that the debtor could pay the delinquency, whatever it was determined to be, over 8 months, in installments of $1,000.00 per month. Thus, when Ursula Koenig wrote the debtor in December 2007 that the board had approved her "payment plan proposal," she did not mean the same thing by the word "plan" as the debtor did.

It is significant that in her request for a payment arrangement, the debtor did not contest the accuracy of the $13,501.17 amount set forth in the notice of intent to foreclose or otherwise put Rees Broome on notice that she was seeking to compromise a disputed claim. Nor did she

13

request a reduction in the amount owed based on financial hardship. Her proposal to pay $4,747.98 immediately and $8,753.19 over 8 months would have left $724.71 of the delinquency shown on the statement of account still owing after the final payment was made, even without any additional charges to the account subsequent to July 31, 2007.[12]

B.

A contract is a legally binding agreement between competent parties creating an obligation on the part of one or both to do or refrain from doing some lawful thing. 4A MICHIE'S JURISPRUDENCE OF VA. AND W.VA., "Contracts", § 2. The elements of a contract are an offer and an acceptance supported by consideration. *Id.* "In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. *Until all understand alike*, there can be no assent, and, therefore, no contract. *Both parties must assent to the same thing in the same sense*, and their minds must meet as to all the terms." *Smith v. Farrell*, 199 Va. 121, 128, 98 S.E.2d 3, 7 (1957) (emphasis added); *Edichal Bullion Co. v. Columbia Gold Mining Co.*, 87 Va. 641, 646, 13 S.E. 100, 101 (1891) ("Where there is a *misunderstanding as regards the terms of a contract*, neither party is liable in law or equity.") (emphasis added). At the same time, "the law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. If his words and acts, judged by a reasonable standard, manifest an intention to agree, it is immaterial what may be the real but unexpressed state of his mind." *Lucy v. Zehmer*, 196 Va. 493, 503, 84 S.E.2d 516, 522 (1954). In *Lucy*, the

---

[12] A total of $310.00 in late charges and legal fees (which included Rees Broome's letter to the board of directors conveying the debtor's proposal) had been added to the account between the date of the notice of intent to foreclose and the date of Ursula Koenig's letter that the board had approved the payment plan.

14

Supreme Court of Virginia found specific performance appropriate to enforce an alleged contract to sell a farm despite a contention that the writing had been signed in jest. The agreement was handwritten on the back of a restaurant guest check and read, in its entirety, "We hereby agree to sell to W.O. Lucy the Ferguson Farm complete for $50,000.00, title satisfactory to buyer." 196 Va. at 494, 84 S.E.2d at 517. The difference, however, between *Lucy* and the present case is that "sell" can have only one reasonable meaning, and the fact that the property owner may have harbored a private intention at variance with his words was irrelevant. That is not the situation presented here. Here, there was a complete disconnect between the parties as to what was meant by "plan." The debtor understood the term to mean the payment of a specific sum over an 8 month period. The board of directors never agreed to the specific sum contained in the debtor's request, and Rees Broome, in communicating the board's action to the debtor, understood "plan" to simply mean payment of the delinquency over 8 months. Both are reasonable understandings of what was meant by "plan," but unless both parties had the same understanding there could not be a binding contract as to the amount the debtor was required to pay.

There is an additional issue. In Virginia a promise to pay sums already due is not sufficient consideration, standing alone, to create a binding contract. *Albright v. Burke & Herbert Bank & Tr. Co.,* 249 Va. 463, 457 S.E.2d 776 (1995) (holding that borrower's promise to pay sums already due was not sufficient consideration to support bank's alleged oral agreement to refinance existing loan, in absence of agreement for higher interest rate). At the same time, the law favors settlement of actual or threatened litigation, *Stamie E. Lyttle Co. v. County of Hanover*, 231 Va. 21, 26, 341 S.E.2d 174, 178 (1986), and an agreement to settle a disputed or uncertain claim will be enforced under the rubric of an accord and satisfaction. An

"accord" has been defined as "the agreement that a debtor will give and the creditor will accept something in settlement of a disputed claim." *John Grier Constr. Co. v. Jones Welding & Repair, Inc.*, 238 Va. 270, 272, 383 S.E.2d 719, 720 (1989). The "satisfaction" is the "fulfillment, or carrying out, or execution of the agreement." *Katzenberger v. Bryan*, 206 Va. 78, 84, 141 S.E.2d 671, 676 (1965). Fundamental, however, is that an accord and satisfaction is merely a new contract in which there must be an offer and acceptance. *John Grier Constr.*, 238 Va. at 272, 383 S.E.2d at 720. As explained by the Supreme Court of Virginia,

> [A]n accord and satisfaction does not result unless the debtor intends his offer as a satisfaction of the demand and such intention is clearly made known to the creditor and accepted by the creditor in accordance with the debtor's intention. Both the giving and the acceptance in satisfaction are thus essential requisites and if either be lacking there can be no accord and satisfaction.

*Kasco Mills, Inc. v. Ferebee*, 197 Va. 589, 594, 90 S.E.2d 866, 871 (1956) (original source and internal quotations omitted); *see also John Grier Constr.*, 238 Va. at 272, 383 S.E.2d at 720-21; *M & B Constr. Co. v. Mitchell*, 213 Va. 755, 759, 195 S.E.2d 873, 877 (1973); *Katzenberger*, 206 Va. at 84, 141 S.E.2d at 676. The problem here is that nothing in the debtor's request for a payment arrangement even remotely suggests that she was contesting the amount of the delinquency, as opposed to simply seeking time to pay it. Even if it were therefore the debtor's subjective intent to pay a different amount than claimed by Rees Broome on behalf of Alexandria Overlook, that intention was not "clearly made known" either to Rees Broome or Alexandria Overlook. For that reason, the court can only conclude that the evidence does not establish an accord and satisfaction.

C.

In the absence of a legally-enforceable agreement to treat the debtor's obligation for the delinquent payments as extinguished if she made payments of $8,028.48 over 8 months, neither the email from Ms. Hernandez informing her she still owed something nor the filing of the lawsuit to collect it constituted "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law," within the ambit of 15 U.S.C. § 1692f(1), and Rees Broome is therefore entitled to summary judgment on Counts 1 and 9. Accordingly, the court need not reach the additional issues urged by Rees Broome. The court simply notes that, contrary to Rees Broome's argument, the email, viewed in the context of all that had gone before, would reasonably be understood as more than purely informational and would clearly constitute an effort to collect the amounts stated. With respect to the claimed economic and emotional distress damages, the debtor's evidence as to the economic losses does seem weak as regards causation, but judging the weight of evidence is not appropriate in the context of summary judgment. *Mercantile Peninsula Bank v French (In re French)*, 499 F.3d 345 (4th Cir 2007).

III.

Only brief comment is necessary with respect to Count 7. There is no dispute that Rees Broome continued to report the 2006 judgment as a current obligation long after it had been marked satisfied. The only explanation given is that its automated system simply reports old information anew each month. Exactly why allowing a credit-reporting system to run on auto-pilot and report outdated information would constitute "the maintenance of procedures

17

reasonably adapted to avoid any such error" within the meaning of 15 U.S.C. § 1692k(c) is a mystery. While it is possible that Rees Broome may be able to demonstrate at trial that its system was "reasonably adapted" to avoid such an error, the summary judgment record certainly does not compel such a finding. With respect to the claimed damages, the observation made with respect to Counts 1 and 9 apply with equal force to Count 7. For that reason, summary judgment will be denied with respect to Count 7.

A separate order will be entered consistent with this opinion.

| **September 8, 2011** | **/s/ Stephen S. Mitchell** |
|---|---|
| Date: _____ | _____ |
| | Stephen S. Mitchell |
| Alexandria, Virginia | United States Bankruptcy Judge |

Copies to:

Pammalla Shannon Uplinger
5111 Maris Avenue
Apt 400
Alexandria, VA 22304
Plaintiff *pro se*

David D. Hudgins, Esquire
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, VA 22314
Counsel for the defendant